**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Ronald Ryan Brand, et al.,

    Plaintiffs,

vs.

United States of America, et al.,

    Defendants.

No. CV-15-00739-PHX-PGR

ORDER

Pending before the Court is Plaintiffs' and Counter-Defendant/Third Party Defendant Ronald Ryan Brand's Joint Motion for Partial Summary Judgment as to Defendant U.S.A.'s Sixth Affirmative Defense Alleging Right to Limit Liability (Doc. 124). Having considered the parties' memoranda in light of the relevant portions of the submitted record, the Court finds that the motion must be denied.[1]

Background

The plaintiffs, Ronald Brand, Cheryl Brand, the Brands' minor child M.B., and Allison Tashlik and Adam Rinne, commenced this action on April 23, 2015. The

---

[1] The Court notes that it is discussing herein only those arguments raised by the parties that the Court considers necessary to the resolution of the summary judgment motion.

action arises from the collision on the lower Colorado River, north of Yuma, Arizona, on July 5, 2013 between an 18-foot Bayliner Capri power boat operated by Ronald Brand, which contained the other plaintiffs, along with two non-party minors, as passengers, and a 23-foot SAFE patrol boat belonging to the United States Customs and Border Patrol, which contained three CBP agents. Very briefly and simply stated, prior to the collision, the plaintiffs' boat was traveling southbound on the river, moving diagonally from the east side of the river towards the west side with the intention of making a right-hand turn into Clear Lake Inlet, which is on the west side of the river; at that time, the CBP boat was traveling southbound on the river along the west side of the river, and was behind and to the right of the plaintiffs' boat just prior to reaching the inlet; just before the collision, while the boats were approaching close to each other, Ronald Brand, in preparing to turn the plaintiffs' boat into the inlet, proceeded to veer left towards the center of the river before making an approximately 90-degree right turn towards the mouth of the inlet; the CBP boat operator, not being aware that the plaintiffs' boat was going to turn right after veering to the left, attempted to pass the plaintiffs' boat on its right side, which resulted in the CBP boat "t-boning" the right side of the bow of the plaintiffs' boat. As a result of the collision, the CBP boat ended up on top of the bow of the plaintiffs' boat, causing significant damage to the plaintiffs' boat and serious injury to one of the plaintiffs and minor injuries to three other plaintiffs; the CBP boat sustained no measurable damage and none of its crew was injured.

The plaintiffs' First Amended Complaint (Doc. 37), in which the United States is the sole named defendant, alleges claims for negligence and vicarious liability, gross negligence, and negligent entrustment pursuant to the Federal Tort Claims Act

("FTCA")[2], 28 U.S.C. § 2674 *et seq.*, the Public Vessels Act ("PVA")[3], 46 U.S.C. § 31101 *et seq.*, and the Suits in Admiralty Act ("SIAA")[4], 46 U.S.C. § 30901 *et seq.*

The United States has filed an Amended Third-Party Complaint (Doc. 30) pursuant to Fed.R.Civ.P. 14(c) against Ronald Brand, wherein it alleges that the collision was due to his negligent operation of the plaintiffs' boat, and a [Second] Amended Counterclaim (Doc. 39) against Ronald Brand, wherein it alleges claims for negligence per se and negligence against him. The United States' Amended Answer (Doc. 29) alleges as its Sixth Affirmative Defense (¶ 50) that "[i]f plaintiffs sustained damages by reason of the matter alleged in the complaint, which is denied, then, pursuant to the Public Vessels Act, the United States is entitled to the exemptions from and limitations of liability provided by law to an owner and operator of a vessel." The plaintiffs seek summary judgment as to this affirmative defense.

---

[2] The Court agrees with the United States that the FTCA is inapplicable to the maritime claims raised by the plaintiffs in light of 28 U.S.C. § 2680(d), which provides that the FTCA does not apply to "[a]ny claim for which a remedy is provided by chapter 309 [the SIAA] or 311 [the PVA] of title 46 relating to claims or suits in admiralty against the United States[,]" and in light of the exclusivity provision of the SIAA, 46 U.S.C. § 30904 ("If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States[.]"

[3] The PVA permits civil actions in admiralty against the United States for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1).

[4] The SIAA permits civil actions in admiralty against the United States "[i]n a case in which, if a vessel were privately owned or operated, ... or if a private person or property were involved, a civil action in admiralty could be maintained[.]" 46 U.S.C. § 30903(a). The SIAA is "the maritime analog to the FTCA." Ali v. Rogers, 780 F.3d 1229, 1233 (9th Cir.2015).

- 3 -

Discussion

The sole issue before the Court is whether the plaintiffs are entitled to partial summary judgment on the issue of whether the United States can limit its liability pursuant to the Limitation of Liability Act ("LOLA"), which limits a shipowner's liability for any damages arising from a maritime accident to the value of its vessel and its freight, provided that the accident occurred without the owner's "privity or knowledge." 46 U.S.C. § 30505.[5] Section 30505 is applicable to the United States pursuant to the PVA, which states that "[t]he United States is entitled to the exemptions from and limitations of liability provided by law to an owner, charterer, operator, or agent of a vessel."[6] 46 U.S.C. § 31106.

The Unites States' eligibility for limited liability under LOLA is evaluated under a two-step, burden-shifting framework. First, the Court must determine what acts of negligence caused the accident. In this regard, the plaintiffs bear the initial burden of demonstrating that the United States is liable for their losses.[7] Northern Fishing

---

[5]
 Section 30505 provides in relevant part:

(a) ... the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. ...
 (b) ... claims, debts, and liabilities subject to limitation under subsection (a) are those arising from ... any loss, damage, or injury by collision ... done, occasioned, or incurred, without the privity or knowledge of the owner.

[6]
 The identical provision is also found in the SIAA, 46 U.S.C. § 30910.

[7]
 The elements of a negligence claim in a limitation of liability proceeding are the same as the elements of negligence under common law: duty, breach of duty, causation, and damages. Pearce v. United States, 261 F.3d 643, 647 (6th Cir. 2001). The common law requirement of proximate causation and the related

- 4 -

& Trading Co., Inc. v. Grabowski, 477 F.2d 1267, 1271-72 (9th Cir.1973); Otal Investments Ltd. v. M/V Clary, 673 F.3d 108, 115 (2nd Cir.2012). If the plaintiffs ultimately fail to do so, then the United States is entitled to exoneration and there is no need to consider the limitation issue. In the Matter of Hechinger, 890 F.2d 202, 207 (9th Cir.1989) ("The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited. If no liability exists there is nothing to limit.") Second, if the plaintiffs satisfy their burden of demonstrating the United States' negligence, then the Court must determine whether the United States had privity or knowledge of the negligent acts, which is an issue on which the United States bears the burden of proof. Oliver J. Olson & Co. v. Luckenbach Steamship Co., 279 F.2d 662, 672 (9th Cir.1960); In re Fun Time Boat Rental & Storage, LLC, 431 F.Supp.2d 993, 997 (D.Ariz.2006).

The Court concludes, in agreement with the position argued by the United States, that the limitation of liability issue cannot be resolved through summary judgment because the evidence of record, viewed in favor of the United States, the non-moving party, establishes that there are genuine issues of material fact as to whether Ronald Brand or agents of the United States were negligently responsible for causing the two boats to collide. Because the determination of what acts of negligence caused the collision, the first step in the limitation of liability analysis, cannot be determined by the Court as a matter of law based on the submitted record, the Court does not reach the "privity and knowledge" second step of the analysis at this time.

The plaintiffs, who have not submitted any expert evidence of their own

---

superseding cause doctrine apply in admiralty tort cases notwithstanding that the doctrine of comparative fault also applies to such cases. Exxon Co., USA v. Sofec, Inc., 517 U.S. 830, 837 (1996).

regarding the cause of the collision[8], argue that they have met their burden of sufficiently proving the United States' negligence for purposes of the limitations defense through the admissions made by the United States in two internal investigation reports its agents authored concerning the reasons for the collision: a Marine Incident Report by the U.S. Customs and Border Protection Office of Air and Marine ("MI Report"), and a Critical Incident Team Report by the U.S. Border Patrol ("CIT Report"), both of which were written relatively shortly after the collision.

The MI Report concluded that the probable cause of the collision was that "[t]he CBP vessel operator failed to take proper and effective action to avoid overtaking the civilian vessel. (COLREG 6)".[9] Regarding the CBP boat, the report listed the following factors as contributing to the collision: "The CBP crew lacked sufficient area knowledge[;]" "VC [vessel commander] decision to allow a CM [crew member] with limited experience in the area to operate as VO [vessel operator][;]" "Insufficient CRM [crew resource management] from the crew of 234353 [the CBP boat] at the time of the accident[;]" "The VO misinterpreted the intended course of the Bayliner[;]" "VO was operating the vessel at an unsafe speed for prevailing traffic conditions[;]" and "The high density boating traffic." Regarding the plaintiffs' boat, the report listed the contributing factor as being "[i]mproper look out. Bayliner

---

[8] According to the United States, and uncontroverted by the plaintiffs, the plaintiffs withdrew their designated accident reconstruction experts two days before their depositions and verified that they would not be called at trial.

[9] COLREGS are the International Regulations for Preventing Collisions at Sea.
The Inland Navigational Rules, 33 C.F.R. § 83.01 *et seq.*, are statutory rules applicable "to all vessels upon the inland waters of the United States[.]" 33 U.S.C. § 2071; 33 C.F.R. § 83.01(a).

operator failed to look right before turning right. (COLREG 5)."

The CIT Report concluded that the probable cause of the collision was that the CBP "Vessel Operator (VO) and Vessel Commander (VC) failed to maintain proper speed (per COLREGS Nav Rule 6) and position (per COLREGS Nav Rule 8) of the vessel when attempting to overtake the civilian vessel (per COLREGS Nav Rule 13)." The report listed the contributing factors involving the CBP boat as follows: "The crew failed to re-assess risk when Crewmember 1 ... became VO[;]" "The VO misinterpreted the intended course of the Bayliner[;]" "The VO had limited experience in the marine environment[;]" "The VO had limited area knowledge[;]" "The boating traffic was higher than what the agents normally encountered[;]" and "Yuma Border Patrol Station ... failed to track training for crewmen or VCs under instruction." The report listed the contributing factors involving the plaintiffs' boat as being "Limited boating experience" and "Improper look out, (Per COLREGS Nav Rule 5)".

The United States argues that its two investigative reports which the plaintiffs rely on to establish negligence are insufficient to allow the Court to allocate responsibility for the collision as a matter of law on summary judgment because those reports were issued prior to discovery in this litigation and do not take into account subsequent expert evidence submitted by the United States. It is the contention of the United States that this later-obtained information, which it asserts places the blame for the collision solely on Ronald Brand, so changed the initial understanding of the facts underlying the collision as to render its earlier investigative reports irrelevant and/or simply incorrect. This subsequent evidence includes in part the expert report of Eugene Hickey, who states that he is a retired U.S. Coast Guard captain with sixty years of seagoing experience who has

previously testified as an expert witness in numerous maritime collision cases in federal court.[10] Capt. Hickey, who disputes the main negligence-related findings of the two investigative reports relied on by the plaintiffs, concluded in part in his report as follows:

> Cause and Culpability - In my opinion, the *Bayliner* was solely culpable for the collision with the *M353* [the CBP boat] for the following reasons:
>
> The sole proximate cause of the collision was that the driver of the Bayliner suddenly turned across the path of the down-bound *M353*, which was proceeding along the riverbank on the California side of the Colorado, without first checking to see if his boat's turn would result in a dangerous encounter with a nearby vessel.
>
> This action was a failure to exercise reasonable care and prudent seamanship, and, to the contrary, constituted a gross violation of the standard of care applied to vessel operators. It also amounted to a violation of Rule 5 of the Inland Navigation Rules [the "Lookout Rule"] and culpable fault, resulting in full and sole responsibility for the collision, the damage to the *Bayliner*, and the injuries to its passengers.
>
> Comparative fault of the *M353* – In my opinion, *M353* was navigated with reasonable care on the afternoon of July 5, 2013, while transiting the Colorado River, and was in no way at fault for the collision with the nearby *Bayliner*. *M353* violated none of the existing Inland Navigation Rules, or any other regulation or statute intended to prevent collisions on this body of water. Additionally, no action or inaction by the *M353* amounted to a proximate cause of the accident, which must be present to establish culpability. The action that caused this collision was solely aboard the *Bayliner*, and under its complete control to prevent.

Capt. Hickey further opined that the internal investigation reports relied on by the plaintiffs "did not have significant information and data that subsequently were developed concerning the angle of collision analysis[,]" that the CBP boat

---

[10] The Court accepts for purposes of resolving the summary judgment motion that Capt. Hickey qualifies as an expert on the issues in his report since the plaintiffs have not challenged his qualifications.

"maintained a vigilant lookout at all times during the approach to the collision, in full compliance with Rule 5[,]" that the CBP boat "maintained a safe speed at all times material to the event[,]" and that had the plaintiffs' boat "not altered course to starboard when it did, the collision could not have happened, and that the closest point of approach, the separation between vessels, would have been over 90 feet."

In resolving a summary judgment motion, the Court's function is not to determine the truth of the matter underlying the motion but to determine based on the submitted evidence, viewed in the non-moving party's favor, if there is a genuine issue for trial. In doing so, the Court may not make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts since those functions are for the trier of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986).

Having reviewed the record under this standard, the Court concludes that the expert evidence submitted by the United States relevant to the negligence prong of the limitation of liability defense is sufficient to defeat the plaintiffs' partial summary judgment motion. Thomas v. Newton International Enterprises, 42 F.3d 1266, 1270 (9th Cir.1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion."); In re Worlds of Wonder Securities Litigation, 35 F.3d 1407, 1425 (9th Cir.1994) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving's party's case."); Bieghler v. Kleppe, 633 F.2d 531, 534 (9th Cir.1980) (In a FTCA action involving an accident inside a tunnel in a national park, the court concluded that the affidavit of the plaintiffs' accident reconstruction expert who opined that the cause of the accident was the negligence of the defendants in lighting the tunnel was sufficient to defeat the Government's summary judgment motion.) Regardless of the plaintiffs' contentions regarding the difficulties the United

States will have supporting its LOLA defense at trial, the resolution of the issues of whether any agent of the United States committed a negligent act leading up to the collision, or whether Ronald Brand did so, and whether any such act legally constituted a proximate or superseding cause of the collision must await the trial of this action since they simply cannot be determined as a matter of law at this stage of the litigation. Therefore,

IT IS ORDERED that Plaintiffs' and Counter-Defendant/Third Party Defendant Ronald Ryan Brand's Joint Motion for Partial Summary Judgment as to Defendant U.S.A.'s Sixth Affirmative Defense Alleging Right to Limit Liability (Doc. 124) is denied.

DATED this 4th day of May, 2017.

Paul G. Rosenblatt
United States District Judge